UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRA CERDA,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.  1:22-cv-00406-BAM<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Docs. 12, 15) |

**INTRODUCTION**

Plaintiff Alejandra Cerda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The Commissioner filed a Cross-Motion for Summary Judgment. (Doc. 12.) The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. (Docs. 12, 15, 16.)[1]

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 6-8.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment, deny her appeal of the administrative decision, and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits and supplemental security income on February 25, 2020. AR 222-235. Plaintiff alleged that she became disabled on March 1, 2018, due to diabetes, open heart surgery, amputated toes, and retinopathy. AR 222, 264. These claims were denied initially on August 21, 2020, and upon reconsideration on October 28, 2020. AR 138-143, 146-150. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Shiva Bozarth held a hearing on March 24, 2021. AR 37-69. ALJ Bozarth issued an order denying benefits on the basis that Plaintiff was not disabled on May 14, 2021. AR 21-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 5-10. This appeal followed.

### Hearing Testimony

The ALJ held an in-person hearing on March 24, 2021. AR 37-69. Plaintiff appeared with her attorney, Anthony Gonzales. *Id.* Freeman Leeth, an impartial vocational expert, also appeared and testified. AR 62-68. The ALJ admitted Exhibits 1A to 14F into evidence. AR 40.

In response to questions from the ALJ, Plaintiff testified that the last time she worked was in February 2018 tying vines and doing field work for Leopoldo's Farm Services. AR 42. Plaintiff testified that she had to carry ten pounds or less during that position and was on her feet all day. AR 43. Prior to that position, Plaintiff worked for a company called Max-E Enterprises as a Wendy's manager for approximately two years. AR 43-44. During her shifts, she would supervise five people and did not have the ability to hire, fire, or make schedules for the employees she supervised. AR 44. In that position, Plaintiff ordered supplies for the restaurant, was able to operate a cash register, and was able to operate the grill and fry area. *Id.* The heaviest item she lifted in that role were fry boxes which weighed approximately 25 to 30 pounds. *Id.*

Before working for Max-E Enterprises, Plaintiff worked for Pay and Save in stocking and as a cashier. *Id*. In that position, Plaintiff was on her feet all day and the heaviest thing she had to lift was boxes weighing approximately 30 pounds. *Id*. Prior to working for Pay and Save, Plaintiff worked for Moonlight Packing from April to October 2013. AR 45. There, she was responsible for packing, receiving, tagging, and shipping. AR 45. While she worked in the packing area, the heaviest thing she needed to lift were boxes weighing approximately 20 pounds. *Id*. While working in shipping, Plaintiff was responsible for finding the correct pallet, putting the correct label on the pallet, and ensuring that the pallet was ready to be shipped. AR 46. In that shipping role, Plaintiff had to make sure that there were the appropriate fruit items on the pallet but was not required to lift anything. *Id*.

Prior to these roles, Plaintiff worked full-time seasonally for Garry Packing from 2006 to 2012 for seasons that ran from August to December. AR 47. Plaintiff testified that, in that position, she worked for approximately three weeks at a time. *Id*. Plaintiff testified that she also worked for Del Monte in a seasonal role canning tomatoes. *Id*. At Del Monte, she worked in the office on filing and finding fill-in workers for absent employees. *Id*. There, the heaviest thing she had to lift was ten pounds or less and she spent approximately four hours per day on her feet and half the time she spent in a chair. *Id*. She operated a telephone and computer. AR 48-49.

Plaintiff testified that she participated in a course for office assistants for about two months in 2000. AR 49. She testified that she was right-handed. *Id*. She currently lives with her parents in a house along with her 13-year-old daughter, 23-year-old son, and oldest sister. AR 49-50. Plaintiff's mother prepares her and her daughter's meals. AR 50. Plaintiff stated that she cannot prepare her own meals because she fears being burned or injuring someone around her as her legs from the knees down are very weak and she cannot maintain her posture or balance if she is carrying something or not leaning on something. *Id*. She also noted that she has vision problems due to her detached retinas and cataracts and has had a few surgeries related to her vision. *Id*. She has trouble seeing things if the light is insufficient. *Id*. In response to a question from the ALJ, Plaintiff responded that she could not feel it if someone were to poke her on the bottom of either foot. AR 51. She has a loss of sensation in her legs from her knees down. *Id*. Plaintiff noted that she does not use a cane but her daughter typically will help her move around the house or hold onto the shopping cart at the store. *Id*. When

3

her daughter is not home from school, Plaintiff's mother would hand her whenever she needed and moves around by holding onto the wall or nearby furniture. *Id*. She further stated that she uses her walker when she goes on morning walks but is unable to walk the length of a football field without her walker. AR 53. When she goes to the grocery store, she waits in the car for her daughter to bring a shopping cart to her and then goes inside the grocery store with her. *Id*. She is not able to put groceries in the cart herself and her daughter or mother will add the groceries to the cart. *Id*. Plaintiff does not drive the car herself. *Id*.

Plaintiff checks her blood sugar every morning and every night before she goes to bed. *Id*. Plaintiff takes her insulin and follows a diabetic diet. AR 54. Plaintiff's vision is worse in her left eye than in her right eye, and she cannot read a newspaper but can read a large print book with glasses. *Id*. Plaintiff has not fallen since she received her walker after heart surgery in December 2019, but had fallen approximately ten times prior to that, causing scrapes and scarring. AR 54-55. When asked by the ALJ why she had not gotten a cane, Plaintiff replied that she did not know why and that she did not think it was a big deal when she was getting eye surgery. AR 56. Plaintiff noted that she would fall when she was in a dim or poorly lit area, and that a combination of tripping over things and loss of balance caused her falls. *Id.*

In response to questions from her attorney, Plaintiff stated that, as an office clerk at Del Monte, she worked approximately ten hours a day, seven days a week. AR 57. She stated that she worked as an office clerk the entire time she was at the factory and did not have the ability to hire, terminate, or supervise anyone. *Id.* Plaintiff testified when she stopped working in February 2018, the biggest problem causing her to stop work was detached retinas and bleeding in her eyes. AR 58. The last job she worked was tying vines at Leopoldo's Farm Services, which required her to stand and walk through fields, touching the vines. *Id.* Plaintiff testified that her vision blurring and having "floaters on both of [her] eyes" prevented her from doing that job. AR 59. Plaintiff noted that she did this job despite having her right large toe removed. *Id.* Plaintiff noted that she has not regularly done any housekeeping tasks since March 2018. *Id.* Plaintiff stated that she usually spends her day in a sitting position and usually talks to her parents, watches television, and waits for her daughter to get home from school. AR 59-60. Plaintiff has not had a driver's license since 2014 and has not tried to regain

her driver's license due to her vision problems and sensitive eyes making it difficult to drive safely. AR 60-61. Plaintiff uses a walker when she needs to walk long distances and when she needs to balance without having walls or furniture to hold onto. AR 61. Plaintiff can shower by herself by putting a chair in the shower, and her daughter typically helps her get dressed. *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from VE Freeman Leeth. AR 62-68. The VE first summarized Plaintiff's past work as a "clerk, general" as "light, SVP 3." AR 63. The VE also classified past work as a "farm worker, fruit" as "medium, SVP 2" and classified Plaintiff's past work in her "manager, fast food services" position as "light, SVP 5." *Id.* The VE also stated that Plaintiff worked as a "packer, agricultural produce," which is classified as "medium, SVP 2." *Id.* The VE further noted that Plaintiff worked as a labeler or ticketer, which he categorized as a "packer, agricultural produce" where she performed "the other portion of the job at a light exertion level." *Id.*

The ALJ then asked the VE hypothetical questions. AR 63-65. For the hypotheticals, the ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff. AR 63. For the first hypothetical, the ALJ asked the VE to consider an individual who: can lift or carry 20 pounds occasionally, can carry ten pounds frequently, can stand or walk approximately six out of eight hours, can sit approximately six out of eight hours, can occasionally climb ramps, stairs, ladders, or scaffolds; can occasionally balance, can frequently stoop, kneel, crouch, or crawl; cannot read print smaller than large print books; can never work at unprotected heights; cannot work around fast moving machinery; and must wear eyeglasses. *Id.* The VE stated that such an individual could perform Ms. Cerda's past work of "manager, fast food services;" "farm worker, fruit, as she performed;" and "packer, agricultural produce." AR 63-64. The VE noted that there would be other jobs in the national economy that such an individual could perform, including "light, SVP 2" sorter positions for which 80,000 jobs exist, "light, SVP 2" electronics worker positions for which 30,000 jobs exist, and "light, SVP 2" packager positions for which 100,000 jobs exist. AR 64.

For the second hypothetical, the ALJ asked the VE to assume an individual who can lift or carry ten pounds occasionally, can lift or carry less than ten pounds frequently, can stand or walk about three out of eight hours, would require a cane to stand or walk for more than 15 minutes or

5

across uneven terrain, could never climb ramps, stairs, ladders, or scaffolds, could only occasionally balance, could frequently stoop, kneel, crouch, or crawl, could not read print smaller than large print books, could never work at unprotected heights, could not operate heavy machinery, and would require glasses. *Id*. The VE testified that such an individual could not perform any of Plaintiff's past work. *Id*. The VE testified that there would be jobs in the national economy that such an individual could perform. AR 64-65. These jobs include: Inspector (DOT Code 726.684-110, sedentary, SVP 2, 30,000 such jobs in the national economy); Assembler (DOT Code 726.685-066, sedentary, SVP 2, 40,000 such jobs in the national economy); and Polisher (DOT Code 713.684-038, sedentary, SVP 2, 25,000 such jobs in the national economy). AR 65.

For the third hypothetical, the ALJ asked the VE to assume an individual would need two additional 15-minute breaks per day beyond the breaks normally scheduled throughout the day. *Id.* The VE testified that there would not be any work for such an individual in the national economy. *Id.* For a fourth hypothetical, the ALJ asked the VE to assume an individual who was absent from work two days per month on an unscheduled basis. *Id.* The VE testified that there would not be any work for such an individual in the national economy. *Id.*

In response to questions from Plaintiff's attorney regarding the second hypothetical, the VE initially testified that there would be no erosion of the Inspector, Assembler, and Polisher job numbers given the vision limitation to reading only large print. AR 66. The VE then testified that he would omit the Inspector and Assembler position given vision requirements but would leave the Polisher position. AR 66-67. The ALJ then asked whether there would be any other positions available for such an individual, to which the VE replied that available positions included Stuffer (DOT Code 731.685-014, sedentary, SVP 2, with 35,000 such jobs in the national economy) and Sorter (DOT Code 734.687-042, sedentary, SVP 2, with 48,000 such jobs in the national economy). AR 67. The VE further noted that his testimony about additional breaks or absences was based upon his experience and his testimony regarding job numbers in the national economy was based upon sources that are generally and reasonably relied upon by other experts in his field. *Id.* The VE further stated that his testimony was provided with a reasonable degree of professional certainty and was based on years of training, education, experience, and access to professional resources. AR 67-68.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 24-31. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2018, the alleged onset date. AR 26. The ALJ identified the following severe impairments: diabetes mellitus, diabetic neuropathy, amputation of toes, coronary artery disease, heart disease, and vision loss of the left eye. *Id.* The ALJ classified Plaintiff's hypertension and hyperlipidemia as non-severe impairments as "there is no evidence that these conditions have more than a minimal effect on the claimant's ability to work" but noted that they "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." AR 27. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. *Id.*

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except for lifting and carrying 10 pounds, standing and walking about three hours out of an eight-hour workday. *Id.* The ALJ's RFC also included restrictions that Plaintiff: would need to use a cane to stand or walk for more than 15 minutes or cross uneven terrain; should never climb ropes, scaffolds, ladders or stairs; can occasionally balance; can frequently stoop, kneel, crouch, and crawl; cannot read print smaller than large print books; should never work in unprotected heights or operate heavy machinery; and requires glasses. *Id.* With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff could perform work in the national economy, such as Sorter, Stuffer, or Polisher. AR 30-31. The ALJ therefore concluded that Plaintiff had not been under a disability from the alleged onset date of from March 1, 2018, through the date of the decision. AR 31.

///

///

# SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

///
///
///

# DISCUSSION[2]

Plaintiff contends that the ALJ erred at Step Three of the sequential evaluation by failing to provide sufficient explanation as to whether Plaintiff met or equaled applicable listings.  (Doc. 12 at 19.)  Plaintiff also contends that the ALJ improperly discredited Plaintiff's subjective complaints and symptom testimony.  (Doc. 12 at 21-25, Doc. 16 at 4-6.)  Finally, Plaintiff contends that the ALJ erred at Step Five of the sequential evaluation by failing to reconcile a conflict between the DOT and the VE's testimony regarding the visual acuity necessary to perform jobs proffered.  (Doc. 12 at 25-28, Doc. 16 at 6-8.)

### A.  Step Three

Plaintiff argues that the ALJ erroneously provided insufficient explanation as to whether Plaintiff met or equaled applicable listings.  (Doc. 12 at 19-21, Doc. 16 at 2-3.)  Defendant contends that the ALJ did not err as Plaintiff did not present a specific listing before the ALJ nor meet her burden to present evidence that she met listing requirements.  (Doc. 15 at 4-5.)

At Step Three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity."  *Id.* (citing 20 C.F.R. § 404.1525).  If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry.  *Id.* (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing.  *Id.*  "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  If a claimant's impairment or combination of impairments meets or exceeds a "listing," no

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs. 20 C.F.R. § 404.1520(d).

The Ninth Circuit has held that, "in determining whether a claimant equals a listing under Step Three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, in *Lewis v. Apfel*, the Ninth Circuit examined a case in which the ALJ "did not discuss the combined effects of Lewis's impairments, or compare them to any listing" and noted that "[u]nlike the claimants in *Lester* and *Marcia*, however, [plaintiff] has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). There, the Ninth Circuit determined that the ALJ did not err in finding that the plaintiff's conditions did not equal a listed impairment and noted that the holding in *Marcia* "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Id.* at 513-514. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)

In his Step Three analysis, the ALJ reasoned: "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 27.

Plaintiff argues that the ALJ should have found that her impairments medically equaled a listing. (Doc. 12 at 19-21, Doc. 16 at 2-3.) Plaintiff contends that her counsel argued at the hearing that she was unable to work "due mainly to end organ damage from the diabetes." AR 40. ("The Claimant have [sic] the residual functional capacity to return to any kind of work, due mainly to end organ damage from the diabetes.") However, the hearing transcript does not indicate that Plaintiff's counsel made any argument regarding listing equivalency, and the portion of the transcript cited by Plaintiff discusses Plaintiff's RFC rather than a listing equivalency argument. *See* AR 39-69.

10

Plaintiff further contends that the ALJ should have considered Plaintiff's diabetes mellitus in relation to its effects on the body systems, including Listing 1.00 (Musculoskeletal Disorders), Listing 2.00 (Special Senses and Speech), Listing 4.00 (Cardiovascular System), and Listing 11.00 (Neurological Disorders). (Doc. 12 at 20-21, Doc. 16 at 3.) However, Plaintiff does not specify which of these listings she meets, nor how she meets the Listing. She has therefore not satisfied her burden of proving her impairments satisfy all the criteria of a particular listing. *See Burch v. Barnhart*, 400 F.3d 676, 682–83 (9th Cir. 2005) (finding no error where a plaintiff "does not specify which listing she believes she meets or equals. Further, she does not set forth any evidence which would support the diagnosis and findings of a listed impairment.")

Plaintiff also contends that she submitted evidence of impairments that support a finding of Listing equivalence. (Doc. 16 at 2-3.) These include her application for disability benefits which notes that she had "poorly controlled diabetes with end organ damage, open heart surgery, toes amputated, [and] retinopathy" along with her medical records showing a history of diabetes resulting in diabetic retinopathy, amputation of toes, hypertension, dyslipidemia, and heart disease including a heart attack requiring quintuple coronary bypass surgery. *See* AR 71, 277-279, 301-303, 331-410, 573, 575, 576, 631, 633, 958, 959, 961, 962, 963, 964-966, 969, 971, 974, 978, 981-987, 992, 995, 1003-1004, 1008, 1010, 1013, 1015-1016, 1018, 1020, 1025-1026, 1029, 1035, 1040, 1041, 1046, 1047-1048, 1104-1105. While these records were used by the ALJ in his determination of Plaintiff's RFC, it is not clear whether Plaintiff made any argument regarding equivalency, nor is it clear from these citations that Plaintiff's symptoms are equal in severity and duration to the characteristics of a relevant listed impairment. *See Burch*, 400 F.3d at 682–83.

Accordingly, the ALJ did not err at Step Three.

**B. Plaintiff's Subjective Complaints**

Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 12 at 21-25.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir.

11

2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 28. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id*. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In summarizing and assessing Plaintiff's statements and subjective complaints, the ALJ noted:

> The claimant alleges disability due to poorly controlled diabetes with end organ damage, openheart surgery, amputated toes, and retinopathy (Exhibit 2E). Claimant reported she has impaired night vision and blurriness and wears glasses to see well enough to read a book. She reports being unable to drive due to blurred vision (Exhibit 4E). The claimant noted chest pain with lifting, requiring help dressing, bathing, and that she cannot keep her balance due to amputations. She reported she cannot lift more than 20 pounds and does not drive or do yard work (Exhibit 5D). The claimant testified that she has no sensation from her knees down and that she has to use a walker for long distances. She can grocery shop with assistance from her daughter, leaning on the cart. She does not drive. She cannot read a newspaper due to poor vision but she can read large print books with glasses. She reported having fallen multiple times in the year prior to her heart attack. The claimant reported she has been using a walker since then it has not fallen. She reported she stopped working due to bleeding in her eyes, and that they could only treat one at a time. She reported no feeling in her right foot (testimony).

AR 28.

First, the ALJ noted the inconsistences between Plaintiff's symptom statements and objective medical evidence in the record. *Id*. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. In discussing Plaintiff's RFC restrictions, the ALJ pointed to objective medical evidence in the

record. AR 27-29. These included reports following Plaintiff's coronary artery bypass on December 20, 2019, from which she recovered from and was cleared to return home on December 25, 2019. AR 27, 575 (February 20, 2020 progress note noting normal findings and "Patient states that she feels great"); 476 (January 9, 2020 progress note noting healing and relatively normal findings though Plaintiff reported arm pain), 629 (noting no complaints but some pain at different visits, discharged to home). A follow-up report on February 18, 2020, revealed a normal range of motion, and Plaintiff's annual physical exam had normal findings despite diabetes mellitus, hypertension, fatigue, diabetic neuropathy, and diabetic retinopathy. AR 964-966 (normal findings related to appearance, HEENT, cardiac, lungs, abdomen, and extremities). On January 29, 2021, Plaintiff was assessed with unsteadiness on feet, dizziness and giddiness, and diabetic retinopathy but otherwise normal findings. AR 1107-1108 (normal findings related to appearance, HEENT, cardiac, lungs, abdomen, and extremities). Accordingly, the ALJ properly considered medical evidence as one factor in discounting Plaintiff's testimony.

Plaintiff additionally challenges this reasoning by arguing that the ALJ failed to connect portions of the record to demonstrate which of Plaintiff's statements were undermined. (Doc. 12 at 23.) Even if the ALJ's decision is not a model of clarity, where the ALJ's "path may reasonably be discerned," the Court will still defer to the ALJ's decision. *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019). Here, it is evident from the decision that the ALJ determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects were not supported by the relatively normal findings of the record. AR 27-29.

Second, the ALJ considered an opinion from consultative examiner Dr. Steven Stoltz in discounting Plaintiff's testimony and determining Plaintiff's RFC. AR 29. Dr. Stoltz's opinion was based upon a direct examination and included key findings from the examination. AR 1056-1061. In his neurological assessment, Dr. Stoltz noted that Plaintiff's cranial nerves II through XII were grossly intact, Plaintiff's motor strength was "5/5 in all extremities with good tone bilaterally with good active range of motion," Plaintiff's sensation was grossly intact, and Plaintiff's reflexes were normal and symmetric bilaterally. AR 1060. In his gait assessment, Dr. Stoltz noted that Plaintiff "walked with a slight limp, was rather slow and cautious and was unable to do heel to toe walking." *Id.* In his

assessment of Plaintiff's extremities, Dr. Stoltz noted scars along the medial aspect of her left leg from vein harvesting, poor toenail hygiene with fairly significant onychomycosis," both legs had diminished pulses, right foot had amputation of the first and fifth digits with no active ulcers or wounds, and knees had hyperpigmented scarring due to previous falls.  AR 1059.  Dr. Stoltz's skin, chest, abdomen, back, lungs, cardiovascular, HEENT, and neck assessments were relatively normal.  AR 1057-1059.  In the functional assessment portion of his opinion, Dr. Stoltz noted that "[w]ith her neuropathy and amputations of the toes to the right foot she does have fairly significant difficulty with balance," and stated that her maximum standing and walking capacity was three to four hours per eight-hour workday, she had no sitting restrictions, could occasionally lift and carry ten pounds, had no manipulative restrictions, had occasional postural activity restrictions, and had restrictions from climbing stairs, ramps, ladders, scaffolding, or operative heavy machinery.  AR 1060-1061.  Dr. Stoltz additionally opined that Plaintiff "might benefit from the use of a cane for walking over uneven terrain, going up and down steps or for long distances."  AR 1060.  The relatively normal findings, capacities, and limitations provided by Dr. Stoltz thus support the ALJ's rejecting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments.

The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints.

### C.  Step Five

Plaintiff argues that the ALJ erred in failing to reconcile a conflict between the Dictionary of Occupational Titles ("DOT") and VE's testimony regarding the visual acuity required to perform proffered jobs.  (Doc. 12 at 25-28.)  Specifically, Plaintiff contends that the ALJ failed to seek an explanation from the VE as to whether an individual with Plaintiff's impaired vision could perform jobs that require clearness of vision at 20 inches or less for up to the majority of a workday.  (Doc. 12 at 27.)  Defendant principally argues that Plaintiff's RFC restrictions only prevent her from reading smaller than large print books but do not prevent her from performing other tasks that do not involve reading.  (Doc. 15 at 10.)

At Step Five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir.

2006). To support a Step Five finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g). ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

"[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). The ALJ's duty to inquire is triggered if the conflict between the VE's testimony and the DOT's job description is "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1153-54).

Plaintiff argues that a conflict exists and the ALJ's failure to reconcile created harmful error. (Doc. 12 at 25.) Plaintiff contends there is a conflict between the ALJ's limitations, the jobs proffered by the VE, and the DOT position requirements. *Id.* Here, the ALJ laid out Plaintiff's limitations, which included a requirement that she wear glasses and a prohibition on reading smaller than large print books, in her RFC and the hypotheticals provided to the VE. AR 27 (RFC includes that Plaintiff "cannot reprint [sic] smaller than large print books"), AR 63-64 (ALJ asking the VE in hypotheticals to assume an individual who cannot read print smaller than large print books). The VE initially testified that jobs available to an individual with Plaintiff's limitations included: Inspector (DOT Code

1  726.684-110, sedentary, SVP 2, 30,000 such jobs in the national economy); Assembler (DOT Code
2  726.685-066, sedentary, SVP 2, 40,000 such jobs in the national economy); and Polisher (DOT Code
3  713.684-038, sedentary, SVP 2, 25,000 such jobs in the national economy). AR 65. Under
4  examination by Plaintiff's attorney about whether there would be erosion of jobs due to the "vision
5  limitation, large print only," the VE initially replied that there would be no erosion, but then stated that
6  "[a]ll jobs" would require vision. AR 66. (Q. Well, what I'm asking is, you know, for the inspector,
7  that takes vision. Right? A. Yes. All jobs.) The attorney then asked "it's your testimony that if the
8  worker had to have large print only, that would have no impact on the worker viability in an inspector
9  position. Is that true?" *Id.* The VE replied, "No. You know, I will – I'll agree with you," and removed
10 the positions of Inspector and Assembler but left the position of Polisher. AR 66-67. The ALJ then
11 asked whether there would be any other positions available for such an individual, to which the VE
12 replied that available positions included Stuffer (DOT Code 731.685-014, sedentary, SVP 2, with
13 35,000 such jobs in the national economy) and Sorter (DOT Code 734.687-042, sedentary, SVP 2,
14 with 48,000 such jobs in the national economy). AR 67.

15  Plaintiff contends that there is a conflict between the VE's proffered jobs and Plaintiff's acuity
16 limitations. Within the DOT, the jobs of Sorter (DOT Code 734.687-042) and Polisher (DOT Code
17 713.684-038) require near acuity, defined as "clarity of vision at 20 inches or less," frequently, which
18 is defined as an "[a]ctivity or condition [that] exists from 1/3 to 2/3 of the time." *See Selected*
19 *Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* at 203, 287,
20 C-3, C-4. Additionally, the Stuffer job (DOT Code 731.685-014) requires near acuity occasionally,
21 which is defined as an "[a]ctivity or condition [that] exists up to 1/3 of the time." *Id.* at 308, C-3, C-4.
22 Plaintiff further argues that the VE's retraction of the Assembler based upon visual limitations while
23 leaving Sorter and Polisher jobs with the same acuity requirement underscores the conflict. (Doc. 12
24 at 27-28.), AR 66-67.

25  Plaintiff's argument is inapposite as there was no conflict between the VE's proffered jobs and
26 DOT requirements. In *Smith v. Berryhill*, where the claimant similarly suffered from high myopia and
27 the ALJ included the limitation of requiring large print in hypothetical questions to the VE, the
28 claimant argued that near acuity requirements meant she could not perform the jobs suggested by the

16

VE.  *Smith v. Berryhill*, No. 18-cv-00887-VKD, 2019 WL 4848165, at *25 (N.D. Cal. Sept. 30, 2019).  However, the district court disagreed, distinguishing between the DOT positions based on reading requirements in their job descriptions.  *Id.*  ("the DOT's description for the type-copy examiner and document preparer positions expressly require reading text, whereas the description for the assembler position does not.").  The district court concluded that the "conflict between the vocational expert's testimony and the DOT, therefore, was not obvious or apparent, and therefore the ALJ's obligation to investigate further was not triggered."  *Id.*  (citing *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017); *Gutierrez*, 844 F.3d at 807).

Similarly, the descriptions for the jobs withdrawn by the VE here expressly require reading text.  The description for Inspector (DOT Code 726.684-110) notes the position involves reading and writing tasks such as labeling defects requiring extensive repairs and "maintain[ing] record of defects and repairs to indicate recurring production problems."  726.684-110 Touch-up Screener, Printed Circuit Board Assembly, DICOT 726.684-110.  The description for the Assembler (DOT Code 726.685-066) notes that the Assembler "[r]eviews schematic diagram or work order to determine bonding specifications."  726.685-066 Bonder, Semiconductor, DICOT 726.685-066.  Unlike the positions withdrawn by the VE, the other positions do not involve reading tasks in their description.  *See* 713.684-038 Polisher, Eyeglass Frames, DICOT 713.684-038 ("Polishes plastic eyeglass frames and temple pieces to remove scratches and pit marks, using polishing wheel: Applies abrasive compound to wheel surface, using brush. Starts machine and holds and turns frame parts against wheel to polish parts and remove defects. Inspects and feels polished parts to verify removal of flaws. Presses sandpaper against polishing wheel to remove abrasive residue in preparation for next sequence."); 734.687-042 Button Reclaimer, DICOT 734.687-042 ("Examines buttons for defects, such as chips and cracks, and separates defective buttons from acceptable ones."); 731.685-014 Stuffer, DICOT 731.685-014 ("Tends machine that blows filler into stuffed-toy shells: Inserts precut supporting wire into shell. Places shell opening over stuffing machine nozzle. Depresses pedal to blow cotton or chopped foam rubber filler into shell to impart shape to toy. Places stuffed toy in tote box. Records production. May stuff toys by hand.").  The VE thus considered both the ALJ's limitations and the DOT requirements in proffering jobs that Plaintiff could perform.  The ALJ's duty to inquire

or resolve a conflict is therefore not triggered because the VE's proffered jobs were not at odds with the DOT's listing of essential job requirements. *See Gutierrez*, 844 F.3d at 808. Accordingly, the ALJ did not err at Step Five of the sequential evaluation.

## **CONCLUSION**

For the reasons stated, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's motion for summary judgment and appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Alejandra Cerda.

IT IS SO ORDERED.

Dated:   **May 23, 2023**                    /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE